[Civ. No. 1752.   Third Appellate District.—February 17, 1919.]

## CHARLES HACKELBERRY, Respondent, v. SHERLOCK LAND AND CATTLE COMPANY (a Corporation), Appellant.

MASTER AND SERVANT — INJURY TO SERVANT BY VICIOUS HORSE FURNISHED BY MASTER—ACTION FOR DAMAGES—NEGLECT OF EMPLOYER TO PROCURE MEDICAL ASSISTANCE—INSTRUCTIONS.—In an action by an employee against his employer for damages for injuries sustained by being trampled upon by a vicious horse furnished by the employer for farming work in which the employee was engaged, it was error prejudicial to the defendant to instruct the jury "that if you find from the evidence that the plaintiff was disabled as it is alleged in his complaint, and unable to procure medical aid for the length of time, and that the defendant carelessly neglected to procure medical aid and assistance, as alleged in the complaint, and the evidence shows you that the plaintiff suffered damages from said negligent act, it is your duty to find for the plaintiff in such amount as you may deem reasonable from the evidence, regardless of the cause leading up to the accident," as such instruction assumes that a legal

liability can exist and constitute a cause of action in the absence of a corresponding legal duty.

ID.—OBLIGATION TO PROVIDE MEDICAL ATTENDANCE.—Except as modified by statutory workmen compensation acts, it is a rule applicable to all descriptions of servants that a general obligation to provide medical attendance is not an implied incident of a contract of hiring, and that the master is not bound to defray the expenses of such attendance upon a servant who falls sick or receives personal injuries in the course of his employment, unless he has expressly or impliedly agreed to do so.

ID.—ERRONEOUS INSTRUCTION — SERVANT'S KNOWLEDGE OF DEFECTIVE APPLIANCE.—The court erred in instructing the jury that "a servant is not barred from recovering in every case, as a matter of law, when he knows a defect exists in the appliance and that there is a certain amount of danger surrounding its use, and if you believe from the evidence in this case that the plaintiff knew that a defect existed in the appliance which he used in course of his employment, he is nevertheless entitled to recover in this action, unless you are convinced by the evidence that the risk was so great that a man of ordinary prudence would have been impelled by reason thereof to discontinue his work," since the instruction told the jury that the plaintiff was entitled to recover irrespective of alleged fault on the part of the defendant.

ID.—PROXIMATE CAUSE OF INJURY — UNSAFENESS OF TEAM — DEFENDANT'S KNOWLEDGE.—The court erred in instructing the jury "that the employer must in all cases indemnify his employee for losses caused by the employer's want of ordinary care, and if plaintiff necessarily suffered loss and injury in direct consequence of his obedience to the direction of his employer, and if you believe from the evidence that the team with which the said plaintiff in this case was furnished was untrustworthy and unsafe as alleged in plaintiff's complaint, and if you believe from the evidence that the proximate cause of plaintiff's injury, if any he received, was the unsafeness of said team, then you should find for the plaintiff and he is entitled to recover in this section . . . , " because it instructed the jury that the plaintiff was entitled "to recover in this action" irrespective of alleged fault on the part of defendant.

ID.—DEFENDANT'S KNOWLEDGE OF UNSAFENESS OF TEAM—INSTRUCTION ON FACTS.—The court erred in instructing the jury "that to render defendant liable to plaintiff in damages, it is not necessary that they should have had actual knowledge of the unsafeness of the team used by plaintiff; the proof is sufficiently made out by plaintiff when it is shown that the team and appliance was defective and unsafe in such respect that if a proper inspection of it had been made by defendant, such unsafeness and defectiveness would have been ascertained in time to prevent the injury. If the unsafeness

was conspicuous, defendants will be presumed to have had knowledge of it." The instruction should not have been given for the reason that it takes from the jury the decision of questions of fact and instructs the jury to draw conclusions from presumptions imposed by the court..

ID.—ASSUMPTION OF RISK—INSTRUCTIONS.—In this case, the court did not err in refusing to give certain instructions requested by defendant to the extent that said instructions recognized the defense of "assumption of risk," since the defendant herein cannot be permitted to urge as a defense that the plaintiff either expressly or impliedly assumed the risk of the hazard complained of, and for the further reason that the Roseberry Act which abolishes that defense and repeals section 1970 of the Civil Code in that regard, is not, as to farm labor, repealed by the Workmen's Compensation Act of 1913.

ID.—REFUSAL OF NONSUIT.—For the same reason the court did not err in refusing to grant defendant's motion for nonsuit.

ID.—ERRONEOUS INSTRUCTION NOT PREJUDICIAL.—In this action by a farm laborer for damages for personal injuries, it was error, but not prejudicial to the defendant, to give certain instructions which were given upon the theory that assumption of risk was a defense.

APPEAL from a judgment of the Superior Court of Modoc County.  Clarence A. Raker, Judge.  Reversed.

The facts are stated in the opinion of the court.

Jamison & Wylie for Appellant.

J. T. Sharp and J. S. Henderson for Respondent.

BUCK, P. J., *pro tem.*—Plaintiff while engaged in farming work in the employ of the defendant corporation in October, of 1916, was injured by being trampled upon by a horse, claimed to be vicious, which plaintiff was in the act of unhitching from a harrow team furnished him in his work by the defendant. Upon the trial a verdict and judgment thereon in the sum of six hundred dollars was rendered against the defendant, who appeals therefrom upon the grounds that the court erred in denying defendant's motion for nonsuit, and also erred in giving and refusing to give certain instructions.

In his complaint, after alleging the employment and work thereunder (which is not denied), and that he was injured

by a vicious horse owned and furnished him in his work by
the defendant, plaintiff charges that the defendant's manager
at all times well knew- that said horse referred to was ''an
outlaw, wild, vicious, and treacherous, and was likely at any
moment to become vicious and unruly.'' The complaint also
alleges that after plaintiff was injured by being trampled
upon by the horse, that he ''was unable totally to help him-
self or to procure medical or other assistance, all of which
the said manager of said ranch well knew, and failed, refused,
and neglected without cause therefor to procure for said
plaintiff a doctor of medicines, or to provide a way or means
by which said plaintiff could procure such medical aid, all
of which said medical aid and treatment was necessary and
proper for said plaintiff in his said condition, and without
which he could not recover from his said condition of lame-
ness,'' and that the ranch on which he was injured ''is a dis-
tance of more than ten miles from the town of Alturas, which
was the nearest place where plaintiff could procure medical
or other assistance.''

No demurrer or motion to strike out was filed by defendant.
And defendant's answer, though it specifically denies the al-
legations in the complaint, does not set up any affirmative de-
fenses.

The evidence was in sharp and decisive conflict in regard to
the alleged dangerous and vicious character of the horse in
question, and the defendant's knowledge in regard thereto
and its consequent negligence in the premises.

The following is one of the instructions, the giving of which
by the court is assigned as error:

''The court further instructs you, gentlemen of the jury,
that if you find from the evidence in this case that the plain-
tiff was disabled as it is alleged in his complaint and unable
to procure medical aid for the length of time and that the
defendant herein carelessly neglected to procure medical aid
and assistance as alleged in the complaint, and the evidence
shows you that the plaintiff suffered damages from said neg-
ligent act, it is your duty to find for the plaintiff in such
amount as you may deem reasonable from the evidence re-
gardless of the cause leading up to the accident.''

The giving of the foregoing instruction constituted error,
which, in view of the record as a whole, was also prejudicial
error. The instruction, without warrant, assumes that a legal

liability can exist and constitute a cause of action in the absence of a corresponding legal duty.

"Soon after the commencement of the nineteenth century it was definitely laid down as a rule applicable to all descriptions of servants except apprentices, that a general obligation to provide medical attendance is not an implied incident of a contract of hiring.    In one point of view this rule involves the consequence that the master is not bound to defray the expenses of such attendance upon a servant who falls sick or receives personal injuries in the course of the employment, unless he has expressly or impliedly agreed to do so.    Under another aspect it operates so as to exempt the master from liability for refusing or neglecting to provide such attendance. By nearly all the American courts this rule has been adopted without any qualifications."    (5 Labatt on Master and Servant, 2d ed., par. 1999, p. 6180.)

The apparent harshness of this rule has, of course, been modified by statutory workmen compensation acts.    But, as will be noted later, this case has not been brought within, and does not fall within, the act.

In the case of *Davis* v. *Forbes,* 171 Mass. 548, [51 N. E. 220], also reported in 47 L. R. A. 170, the court holds that an employer is not liable for injuries resulting from failing to promptly furnish medical attendance to one injured in his employment, even though he is responsible for the original injury, and the court sustained the ruling of the lower court in not allowing any recovery upon a count in the complaint "for failure to furnish suitable medical attendance to plaintiff after the injury, although plaintiff was unable by reason of his injuries to secure it for himself, and that, although knowing that plaintiff was suffering great pain and was in need of immediate surgical attention, defendant's servants wrongfully permitted plaintiff to remain for a period of thirty-seven hours without such assistance, by reason of which he alleged that he was suffering great pain and permanent injury."    (See, also, *Denver & R. G. R. Co.* v. *Iles,* 25 Colo. 19, [53 Pac. 222].)

This instruction was particularly prejudicial in this case, and must have influenced the jury to mulct the defendant in damages, because the plaintiff testified in detail to the effect that after his injury he was furnished no medicine and no attention, and after a couple of days, "I told Mr. Soares I

wanted to come in town and see a doctor. He did not say anything. He never gave me an answer, and he drove to town and I did not know it. . . . Soares came again in a day or two, and he brought me a bottle [of liniment], and I put that on—they provided no nurse or any accommodations. They did not even bring me a cup of water. I had to crawl on a chair the best I could. On November 12th I was taken to the town of Alturas. The foot was getting worse and worse.''

The court erred in giving the following instructions at the request of the plaintiff:

''Instruction No. 10. The court instructs you, gentlemen, that a servant is not barred from recovering in every case as a matter of law when he knows a defect exists in the appliance and that there is a certain amount of danger surrounding its use, and if you believe from the evidence in this case that the plaintiff knew that a defect existed in the appliance which he used in course of his employment, he is nevertheless entitled to recover in this action unless you are convinced by the evidence that the risk was so great that a man of ordinary prudence would have been impelled by reason thereof to discontinue his work.''

''Instruction No. 16. The court instructs you, gentlemen of the jury, that the employer must in all cases indemnify his employee for losses caused by the employer's want of ordinary care, and if plaintiff necessarily suffered loss and injury in direct consequence of his obedience to the directions of his employer, and if you believe from the evidence that the team with which the said plaintiff in this case was untrustworthy and unsafe as alleged in plaintiff's complaint, and if you believe from the evidence that the proximate cause of plaintiff's injury, if any he received, was caused by the unsafeness of said team, then you should find for the plaintiff, and he is entitled to recover in this action, yet the amount for which you may find must not exceed the amount prayed for in the complaint.''

Instruction No. 10 is erroneous, in that it instructed the jury that the plaintiff was ''entitled to recover in this action,'' irrespective of alleged fault on the part of the defendant. And the giving of instruction No. 16 was error, in that it directed the jury that they ''should find for the plaintiff and he is entitled to recover in this action,'' irrespective of whether or not the defendant knew or had knowledge of the alleged

39 Cal. App.—49

fact that the team "was untrustworthy and unsafe as alleged in plaintiff's complaint."

As stated in the case of *Haneman* v. *Western Meat Co.,* 8 Cal. App. 698, [97 Pac. 695]: "If it be conceded that the horse was vicious, yet the gist of the action against the defendant was keeping the horse with knowledge by the defendant of his vicious propensity. . . . The common law makes the owner of vicious domestic animals with notice of their vicious propensities responsible, for the reason that under such circumstances it is the duty of the owner to anticipate that such animals will commit such acts as opportunity affords, and it is the duty of the owner to guard against such acts."

Instruction No. 22, as follows, should not have been given, for the reason that it takes from the jury the decision of questions of fact, and instructs the jury to draw conclusions from presumptions imposed by the court: "The court instructs you, gentlemen of the jury, that to render defendants liable to plaintiff in damages, it is not necessary that they should have had actual knowledge of the unsafeness of the team used by plaintiff; the proof is sufficiently made out by plaintiff when it is shown that the said team and appliance was defective and unsafe in such respect that if a proper inspection of it had been made by defendant, such unsafeness and defectiveness would have been ascertained in time to prevent the injury. If the unsafeness was conspicuous, defendants will be presumed to have had knowledge of it."

Defendant assigns as error the giving of instructions Nos. 23 and 24, requested by plaintiff, and also assigns as error the refusal by the court to give instructions Nos. 6 and 7, requested by defendant. Each of these instructions relates to the question of assumption of risk, and as the case must be remanded to the trial court for a new trial, it will be necessary to consider to what extent the doctrine of assumed risk is applicable in the case at bar.

Furthermore, defendant's motion for nonsuit also invokes the defense of assumption of risk. And plaintiff, in his complaint, anticipating assumption of risk as a defense, seeks to meet and combat this defense by alleging as follows:

"That upon the commencement of said work this plaintiff ascertained by his actions that one of the horses of said team was treacherous and tricky and that it was necessary for said plaintiff in the course of said employment in hitching up

and unhitching said team to tie the said horse to a post or other safe place in order to safely handle such horse and said team, and thereupon said plaintiff notified said Frank Soares that said team was not trustworthy, and was untrustworthy by reason of the fact that said horse was vicious, and would kick and would at every opportunity attempt to run away, and requested of said Frank Soares to furnish said plaintiff with a trustworthy and reliable horse in place and stead of said vicious horse, and thereupon said Frank Soares informed plaintiff that said horse was merely slightly nervous, and would within a day or two become quiet and trustworthy, and refused to furnish said plaintiff with a gentle horse in place and stead of said vicious horse.

"That said plaintiff continued to work said horse as a part of said four horse team in the course of his said employment up to and until the nineteenth day of October, 1916, during all of which said times said horse acted viciously and untrustworthy, and it was necessary for plaintiff to and he did watch said horse at all times during his said employment."

And in order to further support this defense, plaintiff, at the trial, without objection on the part of the defendant as to its immateriality so far as the complaint was concerned, testified as follows:

"Q. You did not believe that that horse would do anything after you received the instructions that you had from Mr. Soares except to act a little nervous at times. A. I took his word for it. Q. You did not believe that you were assuming any risk that a prudent man would not at that time, did you? A. No, sir. Q. In continuing to work with that horse you relied absolutely on the assertion made by Mr. Soares as to the reliability of the horse, did you not? A. Yes, sir."

The trial court, upon a new trial of this case, will therefore be directly confronted with the question of whether assumption of risk can be invoked as a defense in this case.

At the trial and in their briefs each side in this case seems to have relied upon section 1970 of the Civil Code, as amended in 1907, for a statement of the law in regard to assumption of risk. But in July of 1916, in the case of *Lassen* v. *Southern Pacific Co.*, 173 Cal. 72, [159 Pac. 143], which arose out of an accident in August of 1912, our supreme court held as follows:

"At the time of the injury complained of the Employers' Liability Act of 1911 was in force (Stats. 1911, p. 796). That

statute abolished the previously available defenses of an employer, in an action by an employee for damages from personal injuries, that the plaintiff had assumed the risk of the hazard from which he was injured, and that the injury was caused by the negligence of a fellow-servant. Consequently, the case must be decided upon the principle that the employer was responsible for the negligence of his employees when such negligence caused injury to another of his employees, and for all injuries caused by dangers arising from the work itself or from the place where it is carried on. That statute also provided that contributory negligence of the employee should not bar his recovery if it was slight and that of the employer or fellow-servant, was gross, in comparison, and that in such cases the jury may diminish the damages according to the proportion of negligence chargeable to the employee.''

To the same effect is the case of *Terry* v. *Southern Pacific Co.*, 34 Cal. App. 330, at page 333, [169 Pac. 86, 87], where the court says: ''The alleged injuries suffered by the plaintiff were caused on the fourteenth day of June, 1913, at which time the statute of this state denied to a defendant a defense based upon any alleged assumption of risk by its employee, and also provided that the contributory negligence of an employee shall not bar a recovery therein where his contributory negligence was slight, and that of the employer was gross, in comparison, but the damages may be diminished by the jury in proportion to the amount of negligence attributable to such employee. . . . (Stats. 1911, p. 796.)''

In the case of *Reynolds* v. *E. Clemens Horst Co.*, 35 Cal. App. 711, [170 Pac. 1082], where the accident to the employee, as shown by the record, occurred in 1913, this court used the following language:

''But, after all, this contention of appellant resolves itself into the legal proposition that she assumed the risk of a known hazard, but this fact, as pointed out in *Crabbe* v. *Mammoth Channel Gold Min. Co.*, 168 Cal. 500, [143 Pac. 714], and other cases, affords no defense under the Employers' Liability Act (Stats. 1911, p. 796), in effect at the time of the accident.''

In that case, however, ''the case was tried upon the theory that the so-called Roseberry Act of 1911, and section 1970 of the Civil Code, were and are applicable to the cause.'' And the argument was not presented that section 1970 was repealed by the Roseberry Act.

In the case of *Crabbe* v. *Mammoth Channel Gold Min. Co.*, 168 Cal. 500, at page 504, [143 Pac. 714, 715], where the "injury which resulted in Crabbe's death, befell him on the thirteenth day of September, 1911, when the Employers' Liability Act was in force," our supreme court, speaking through Mr. Justice Henshaw, states as follows: "But even if it be said that the station as used by Crabbe was in an unsafe condition and that he knew it, this amounts to no more than a declaration that Crabbe assumed the risk of a known hazard. But this fact, by the very terms of the Employers' Liability Act, no longer affords the employer a defense. (Employers' Liability Act, sec. 1, subd. 1.)"

Also, in the case of *Perry* v. *Angelus Hospital Assn.*, 172 Cal. 311, at page 314, [156 Pac. 449, 450], our supreme court used the following language: "In this connection it should be noted that at the time of the accident the Employers' Liability Act of 1911 (Stats. 1911, p. 796) was in force providing that the fact that the employee had assumed the risks of danger from the employment should be no defense in such cases, and that the contributory negligence of the employee should not bar a recovery where his negligence was slight and that of the employer gross, in comparison."

Also, in the case of *Hughes* v. *Warman Steel Casting Co.*, 174 Cal. 556, at page 565, [163 Pac. 885, 889], our supreme court uses the following language:

"When the injury to plaintiff occurred on April 9, 1913, the Employers' Liability Act of 1911 (Stats. 1911, p. 796) was in force. Section 1 of that act provided (stating only its terms pertinent here) that in any action for personal injury sustained by an employee in the course of his employment in which recovery is sought on the ground of want of ordinary or reasonable care on the part of the employer, it shall be no defense that the employee either expressly or impliedly assumed the risk of the hazard complained of. The court, in harmony with these provisions of the act, instructed the jury that under said Employers' Liability Act, the defense of assumption of risk or hazards of the work did not apply; that it was no bar to recovery on account of injury caused by the use of unsafe tools or appliances that plaintiff merely with knowledge of their lack of safety accepted or continued the employment. The provisions of the Employers' Liability Act warranted this instruction by the court. This section 1 as to

all defenses which are mentioned therein, including the defense of assumption of risk, declared rules of substantive law which applied in all actions brought by employees against employers. It is claimed by defendant that the act has no application between employers and employees, unless where both parties had elected to come under its provisions. There is nothing in this point. The act, as far as the defense of assumption of risk (the only one we are now considering) is concerned, applies to all employers and employees and in all actions where the negligence of the employer is the basis of the suit by the employee. As we have said, section 1 lays down rules of substantive law governing all actions by employees against employers for injuries resulting from the negligence of the employer. It is only as to other matters that the election of the parties to come within its terms have relation.''

As already noted, the accident in this case occurred in October of 1916. The present Employers' Liability Act went into effect January, 1914. By its express terms it excludes from the benefit of its provisions ''any employee engaged in farm, dairy, agricultural, viticultural, or horticultural labor, in stock or poultry raising, or any household domestic service.'' The act also provides that ''all acts or parts of acts inconsistent with this act are hereby repealed.''

Now, it is true that this court, in the case of *Reynolds v. E. Clemens Horst Co.*, 35 Cal. App., at page 722, [170 Pac. 1087], uses the following language in referring to this act: ''The said act of 1913 was intended to present and embody a complete scheme for the enforcement of a cause of action like that before us, and it is apparent that all prior legislation on the subject is inconsistent with the provisions of said act.'' But, as above noted, this act of 1913, now in force, does not present or embody any scheme for the enforcement of a cause of action like that before us in the present case. In fact a cause of action arising out of farm labor like that before us now is expressly excluded from the provisions of this act.

Furthermore, the act specifically provides (see sec. 12, div. (c) of subd. 3, Stats. 1915, p. 1081), that ''in all other cases where the conditions of compensation do not concur, the liability of the employer shall be the same as if this act had not been passed.'' Therefore, since the conditions of compensation referred to in the act do not concur to affect the plain-

tiff herein, since he is a farm laborer, it follows that the liability of the defendant employer herein "shall be the same as if this act had not been passed." Also, since section 1 of the Roseberry Act lays down rules of substantive law finally governing all classes of employees, it can be inconsistent with and repealed by the present act only to the extent that the present act includes, and does not exclude, such classes of employees. For these reasons the defendant herein cannot be permitted to urge as a defense that the plaintiff, either expressly or impliedly, assumed the risk of the hazard complained of.

In this connection it may be noted that the case of *Barrett* v. *Metropolitan Cont. Co.*, 172 Cal. 116, [155 Pac. 645], referred to by this court in the recent case of *Fererira* v. *Silvey*, 38 Cal. App. 346, [176 Pac. 371], was not a case involving the relation of employer and employee, and no question was raised therein concerning any Employers' Liability Act. In fact, the relation of employer and employee did not exist between the plaintiff and defendant, the plaintiff being in the employ of the city.

The court, therefore, did not err in refusing to give instructions Nos. 6 and 7, requested by defendant, to the extent that said instructions recognize the defense of assumption of risk in this case; and, for the same reason, the court did not err in refusing to grant defendant's motion for a nonsuit. Also, it was error, though not prejudicial to the defendant, to give instructions Nos. 23 and 24, which were given upon the theory that assumption of risk was a defense in this action.

But, for the reasons already given, the judgment is reversed and cause remanded for a new trial.

Burnett, J., and Hart, J., concurred.