[L. A. No. 20037. In Bank. Dec. 12, 1947.]

DORIS ANDERSON, as Administratrix, etc., Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Hildebrand, Bills & McLeod and Louis H. Brownstone for Appellant.

Jennings & Belcher and Louis E. Kearney for Respondent.

SCHAUER, J.—In this action plaintiff administratrix seeks damages under the provisions of section 51 of the Federal Employers' Liability Act (45 U.S.C.A.) for the wrongful death of her intestate, L. C. Bristow. When the matter came on for trial, defendant objected to the introduction of any evidence, on the ground that the complaint fails to state a cause of action. The objection was sustained, judgment was entered in defendant's favor, and plaintiff appeals. The issue presented is forthrightly defined and the pertinent authorities are helpfully collected in the excellent briefs of counsel for the respective parties. After careful consideration of the briefs and arguments, and after independent research which has disclosed nothing persuasive to a contrary result, we have concluded, for the reasons hereinafter elucidated, that under applicable legal principles the judgment must be affirmed.

A motion to exclude evidence by reason of failure of the complaint to state a cause of action is in the nature of a general demurrer and may be sustained only if the allegations of the complaint, deemed true for this purpose, are totally insufficient to support a judgment in plaintiff's favor. (See *Rannard* v. *Lockheed Aircraft Corp.* (1945), 26 Cal.2d 149, 151 [157 P.2d 1]; *Calhoun* v. *Calhoun* (1947), 81 Cal.App.2d 297, 298-300 [183 P.2d 922].)

Section 51 of the Federal Employers' Liability Act (45 U.S.C.A.) provides, so far as here material, that "Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such

carrier in such commerce, or, in case of the death of such employee, to his or her personal representative . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . ."

Plaintiff's complaint, as amended, alleges in material part that on November 24, 1942, at about 5:30 a. m., the deceased, L. C. Bristow, who resided at Clovis, Curry County, New Mexico, was employed as a conductor on defendant's passenger train which was then "westbound from Amarillo, Texas, to Belen, New Mexico, at a point approximately opposite defendant's station at Gallaher, Curry County, New Mexico"; that as one of his duties deceased was then "checking a certain train order signal at said station from the rear vestibule of said train" and while so doing fell from the train and suffered injuries which "made it impossible" for him to secure help; that defendant's train "then proceeded on past defendant's stations at St. Vrain, Melrose, Taiban and Ft. Sumner until said train arrived at Yeso, New Mexico; that at each of said stations said train was caused to come to a stop and at each point defendant, acting by and through its agents, servants and employees, other than decedent, carelessly and negligently failed to ascertain the whereabouts of decedent, notwithstanding the fact that certain employees of defendant on said train made note of the absence of decedent; that at Yeso the regular conductor of said train finally directed a wire to be sent to other employees of defendant asking such employees to ascertain the whereabouts of decedent and decedent was subsequently found lying alongside defendant's right of way adjacent to the point where he fell off the train. That when said message was finally transmitted to certain employees of defendant, at defendant's station at Yeso, defendant, its agents, servants and employees, carelessly and negligently failed to transmit said message to Clovis, or any other station of defendant's [sic], for an unnecessarily long period of time; that when said message was transmitted to Clovis, defendant, its agents, servants and employees at said station, carelessly and negligently failed to institute and pursue a search for decedent within a reasonable period of time. That as a direct and proximate result of the carelessness and negligence of defendant in the premises, as aforesaid, and the exposure in very cold weather occasioned thereby, said L. C. Bristow was caused to die on the 27th day of November, 1942."

Plaintiff states that on this appeal the issue presented is whether or not a railroad company "that has notice of the absence of an employee from a moving train is under a duty to use ordinary care to ascertain his whereabouts and render aid to him." No allegation or claim is made that the deceased's original injuries resulted from any negligence on the part of defendant, or its officers, agents or employees. (Nor, it is noted, does plaintiff allege that the train was moving at the time the deceased fell from it. The allegations in respect to the circumstances of the fall are, as previously set forth, that while the train was "at a point approximately opposite defendant's station at Gallaher . . . [deceased was] checking a certain train order signal at said station from the rear vestibule of said train" and while so doing fell from the train.) There is no allegation that defendant company had notice or knowledge of the injuries of deceased in sufficient time to have rendered or procured aid that would have saved his life; there is not even an allegation that defendant had notice or knowledge that decedent had fallen from the train or had left it otherwise than intentionally while it was standing at the station mentioned.

Plaintiff argues "that under the law, as it stands today, from the moment that the master has notice of an injury to his servant and of the fact that the servant is unable to aid himself, and whether or not the injury has been caused by any negligence of the master, the master is under a duty to use ordinary care to obtain medical and surgical aid for the employee. If, as a result of a breach of that duty, the injuries to the servant are aggravated, or the servant dies, recovery is allowed," and "that *the time has come to expand this doctrine one step further and to impose a duty upon the employer to use ordinary care to ascertain the whereabouts of a missing employee who is employed on a moving train* so that care may be given to such employee in the event that he is injured." (Italics added.) The rule of law (as to duty of an employer who *has notice* of injury to his servant) from which outpost plaintiff asks us to take the one step further, has been announced in some jurisdictions (see *Hunicke* v. *Meramec Quarry Co.* (1914), 262 Mo. 560 [172 S.W. 43, 54, Ann.Cas. 1915D 493, L.R.A. 1915C 789]; *Troutman's Admix.* v. *Louisville & N. R. Co.* (1918), 179 Ky. 145, 156 [200 S.W. 488, 494]; cf. *Carey* v. *Davis* (1921), 190 Iowa 720 [180 N.W. 889, 12 A.L.R. 904]), but cases in other jurisdictions, including

California, have taken the opposite view (see *Hackelberry* v. *Sherlock Land & C. Co.* (1919), 39 Cal.App. 764, 767-768 [180 P. 37]; *Voorhees* v. *New York C. & H. R.R. Co.* (1909), 129 App.Div. 780 [114 N.Y.S. 242, 244] (affirmed in 198 N.Y. 558 [92 N.E. 1105]); *Allen* v. *Hixson* (1900), 111 Ga. 460 [36 S.E. 810]; *Denver & R.G. R.R. Co.* v. *Iles* (1898), 25 Colo. 19 [53 P. 222, 225]; *Matthews* v. *Carolina etc. Ry. Co.* (1917), 175 N.C. 35 [94 S.E. 714]; *Virginia Iron, Coal & Coke Co.* v. *Odle's Admr.* (1920), 128 Va. 280 [105 S.E. 107]; *Stager* v. *Troy Laundry Co.* (1901), 38 Ore. 480 [63 P. 645, 648, 53 L.R.A. 459].) However, in the present case we do not pass on that rule, for even if we assume for purposes of this decision that we should, if the question were again presented, disapprove the Hackelberry case and adopt the contrary view, we are satisfied that we should not take the "further step" urged by plaintiff. It is not, we think, the province of a state court, in an action brought under the Federal Employers' Liability Act, to "expand" the doctrines of negligence to impose on the employer a duty unknown at common law and neither defined in the act nor recognized by federal court decision.

It has been often pointed out that "the rights and obligations of the parties to an action arising under the Federal Employers' Liability Act depend upon the terms of that Act and the federal decisional law. . . . The question of negligence . . . must be determined not by the decisions of state tribunals ruling on questions of negligence arising under the laws of the states but by the decisions of the federal courts interpreting the Federal Employers' Liability Act." (*Jacobs* v. *Reading Co.* (3d C.C. 1942), 130 F.2d 612, 614.) "The rights which the Act creates are federal rights protected by federal rather than local rules of law. [Citations.] And those rights have been largely fashioned from the common law . . . except as Congress has written into the Act different standards." (*Bailey* v. *Central Vermont R. Co.* (1942), 319 U.S. 350, 353 [63 S.Ct. 1062, 87 L.Ed. 1444, 1447]; see, also, *Haskins* v. *Southern Pac. Co.* (1934), 3 Cal.App.2d 177, 183 [39 P.2d 895]; *King* v. *Schumacher* (1939), 32 Cal.App.2d 172, 177 [89 P.2d 466]; *Southern R. Co.* v. *Gray* (1915), 241 U.S. 333, 339 [36 S.Ct. 558, 60 L.Ed. 1030, 1034]; *Sadowski* v. *Long Island R. Co.* (1944), 292 N.Y. 448 [55 N.E.2d 497, 499].) Thus, in an action brought under the act in which the intermediate appellate court of Ohio, on a question of defense

of assumption of risk, had followed decisions of the Ohio Supreme Court rather than those of federal courts, the Supreme Court of the United States reversed the judgment, and observed that "in proceedings under [the Federal Employers' Liability Act] . . . the rights and obligations of the parties depend upon it and applicable principles of common law as interpreted and applied in the federal courts. [Citations.]

"The Court of Appeals acted upon the erroneous theory that it should follow the views of the Supreme Court of the State rather than those of this Court in respect of questions arising under the Liability Act. That statute, as interpreted by this Court, is the supreme law to be applied by all courts, Federal and State. [Citation.] Where this view is not accepted, as in the present cause, it is within the power of this Court to determine and apply the proper remedy." (*Chesapeake & Ohio Railway Co.* v. *Kuhn* (1931), 284 U.S. 44, 47 [52 S.Ct. 45, 76 L.Ed. 157, 160].)

So far as we have discovered, the point here in issue has not yet been presented to a federal court, and the highest courts of the only two states in which it has arisen have decided adversely to the position of plaintiff in the present case. In *Batton* v. *Atlantic Coast Line R. Co.* (1936), 210 N.C. 756 [188 S.E. 383], an action brought under the Federal Employers' Liability Act, plaintiff alleged that while he was performing his duties as a flagman on defendant's train at Weldon, North Carolina, he fell from a platform and suffered injuries which rendered him helpless; that he was not discovered until approximately five hours later; that defendant was negligent in not discovering plaintiff's absence and locating and assisting him promptly; and that as a result of such alleged negligence plaintiff suffered from exposure to the cold and inclement weather and his injuries received from falling were greatly aggravated. It was also alleged that it was plaintiff's duty as flagman to give a signal to the engineer at each stop; that without such a signal the engineer started the train from Weldon in violation of instructions and custom; and that even after the train left Weldon, the other members of the train crew should have discovered plaintiff's absence inasmuch as they were instructed, and it was their custom, to get his signals at each stop, and in the absence of such signals they should have known he was missing and have taken prompt steps to discover his whereabouts and condition. On demurrer the trial court, as here, held the facts alleged insufficient to constitute a cause of action and rendered judgment

accordingly. On appeal the Supreme Court of North Carolina, affirming the judgment, stated (pp. 387-388 of 188 S.E.) : "In the absence of a statutory or contractual obligation, there is, as a general rule, no duty resting upon the employer to provide surgical or medical attendance or medicine for an employee who is injured or becomes ill while in his employment, except perhaps in a case in which the employee gives service without compensation.

"However, there is a tendency upon the part of the Courts to hold that where in the course of his employment a servant suffers serious injury or is suddenly stricken down in a manner indicating immediate and emergent need of aid to save him from death or serious harm, the master, *if present,* is bound to take such reasonable measure or make such reasonable effort as may be practicable to relieve him, even though the master is not chargeable with fault in bringing about the emergency, and in some jurisdictions it is said to be the duty of the employer to provide medical or surgical assistance in the case of an emergency where it is imperatively demanded to save life or prevent serious bodily injury. . . .

"In the instant case, it is not alleged in the complaint that any of the employees of the defendant was present at the time the plaintiff fell from the platform at Weldon, or that the defendant had *actual knowledge* of the condition of the plaintiff as the result of his fall. Nor are facts alleged in the complaint from which it can be held that the defendant had constructive knowledge of such condition. At most, the defendant knew when and after its train left Weldon that the plaintiff while engaged in the performance of his duties as a flagman on said train *had disappeared* from the platform and had not returned to the train. This knowledge did not impose upon the defendant or any of its employees the duty to make an investigation to discover the cause of plaintiff's disappearance from the platform or failure to return to the train. The plaintiff may have disappeared from the platform and failed to return to the train, while it was standing at the station at Weldon, voluntarily. No facts are alleged in the complaint which imposed upon the defendant or its employees the duty to presume to the contrary.

"Conceding that if the defendant had known that the plaintiff had fallen from the platform at Weldon, and had

thereby suffered injuries which required immediate attention, medical or otherwise, the law would have imposed upon the defendant the duty to exercise reasonable diligence to provide such attention, we cannot hold that in the absence of such knowledge such duty was imposed upon the defendant. We therefore find no error in the judgment dismissing the second cause of action alleged in the complaint. The judgment is affirmed.'' (Italics added.)

*Haggard* v. *Lowden* (1943), 156 Kan. 522 [134 P.2d 676], was also brought under the Federal Employers' Liability Act, and an appeal was taken ''from an order sustaining a demurrer'' to plaintiff's complaint. There plaintiff administratrix alleged that her intestate Haggard was a conductor on a freight train; that while inspecting the train at Topeka, Kansas, as his duties required, he ''was rendered unconscious by a blow on the head'' from an unknown source; that the blow itself was insufficient to produce death; that the other members of the train crew, who had been at an eating house, upon returning to the train failed to see Haggard at his accustomed place on or along the train, failed to ''exercise ordinary care of prudent persons in determining'' his whereabouts, and, although Haggard was the only person authorized to order the movements of the train on its journey, continued the run without knowing where he was or what had happened to him and without attempting to locate him or determine the reason for his absence; that he was left lying unaided for approximately two hours, until discovered by police, and suffered loss of blood and from exposure and lack of prompt medical care which proximately caused his death but which could have been averted if defendants' employees had promptly located and aided him or reported his absence; and that the acts and omissions of defendants and their employees were the proximate cause of his death. The Supreme Court of Kansas, citing the Batton case, *supra,* affirmed the order appealed from. In so doing, it stated the issues and the applicable principles of law as follows (p. 678 of 134 P. 2d) :

''Where a conductor in interstate commerce is seriously injured from an unknown cause, while performing his duties at a stopping point, and under circumstances where he could have been found and his death prevented by the exercise of care by other members of the train crew, does their failure to so discover him constitute actionable negligence under the federal employers' liability act; and, un-

der such circumstances, where the other trainmen, in alleged violation of company rules, started the train without making any effort to locate the injured conductor, and without discovering his predicament or reporting his absence, thereby delaying securing of medical care until too late to prevent his death which would not have otherwise occurred, does the violation of the rules constitute actionable negligence under the above act? . . .

(P. 679 [134 P.2d].) "[I]t is conceded by the appellant, that the original injury sustained by Haggard was not occasioned by nor due to any negligence of the appellee. The substance of appellant's contention is that appellees owed a duty to render aid to an injured employee, regardless of the cause of his injury; that the violation by their employees of company rules was the legal cause of Haggard's injuries not being sooner discovered so that aid could have been rendered, and that it was *not necessary* to liability that appellees have *actual knowledge* of Haggard's injuries at the time they were received by him.

"Without exposition, we think it may be said the appellees would be liable, both under the law and under the company's rules, for failure to render aid, adequate under the circumstances, to an employee injured in the course of his employment, from the time they had actual knowledge of the injuries. We need not pursue this rule further for under the allegations of the petition it cannot be said the appellees had such knowledge. On the contrary, the allegations are that after Haggard received his injuries, through appellees' negligence he was not found and was permitted to be unaided and without attention, his death resulting from his exposure and lack of medical care. . . .

(P. 680 [134 P.2d].) "Appellant contends that in order for the company to be liable for negligence, it was not necessary the train crew have actual knowledge that Haggard had been injured, and that the appellees' contention that duty to extend care and aid did not arise until their employees knew of the injuries is too narrow, and that if the train crew knew or should have known that Haggard was in a position of danger, there was negligence in failure to assist him. ln support of her contention, appellant does not cite any authority specifically in point, but she directs our attention largely to decisions dealing with injuries sustained in switching cases. . . . None of the cases cited support the contention that under circumstances

similar to those here involved, notice of the injury is not necessary. . . .

(P. 681 [134 P.2d].) "We are of opinion that, under the circumstances of this case, the company was not negligent in not extending aid to its injured employee, when it was not aware of such injuries." (Italics added.)

Although, as above stated, we are aware of no federal decision upon the issue here involved, we note that in *Cortes* v. *Baltimore Insular Line* (1932), 287 U.S. 367, 371, 377 [53 S.Ct. 173, 77 L.Ed. 368, 371-374], the court in discussing the liability of shipowners under the Merchant Marine Act of 1920 (41 Stats. at L. 1007, ch. 250, § 33; 46 U.S.C., § 688) and the bearing of the Federal Employers' Liability Act and decisions thereunder upon the liability of an employer whose negligence had caused personal injury to a seaman declared (speaking through Mr. Justice Cardozo); "The question then is to what extent the ancient rule has been changed by modern statute . . . [p. 372 U.S.; 371 L.Ed.] We are to determine whether death resulting from the negligent omission to furnish care or cure is death from personal injury within the meaning of the statute . . . [p. 373 U.S.] So, in the case at hand, the proper subject of inquiry is not the quality of the relation that gives birth to the duty, but the quality of the duty that is born of the relation. . . . [p. 376 U.S.; 372 L.Ed.] The failure to furnish cure is a personal injury actionable at the suit of the seaman during life, and at the suit of his personal representative now that he is dead. . . . We are warned, however, that in giving this content to the statute we are omitting to give heed to its reference to the act regulating the remedies of railroad employees, and are ignoring the standards of duty thus carried over and adopted . . . [p. 373 L.Ed.] True indeed it is that a common carrier by land is not subject to a duty, except in special circumstances, to give maintenance or cure to sick or disabled employees . . . [p. 377 U.S.; 374 L.Ed.] We do not read the act for the relief of seamen as expressing the will of Congress that only the same defaults imposing liability upon carriers by rail shall impose liability upon carriers by water. The conditions at sea differ widely from those on land, and the diversity of conditions breeds diversity of duties. . . . There is doubt, and that substantial, whether the administrator of a railroad engineer who by misadventure has fallen from his locomotive while the train is on a bridge has a cause

of action under the Federal Employers' Liabilty Act because of the failure of the crew of the train to come to the rescue of their comrade. [Citation.] There is little doubt that rescue is a duty when a sailor falls into the sea, *United States* v. *Knowles* (D.C.) 4 Sawy. 517, F.Cas. No. 15,540, and that a liability to respond in damages is cast upon the shipowners if he is abandoned to his fate. [Citations.]

"The act for the protection of railroad employees does not define negligence. It leaves that definition to be filled in by the general rules of law applicable to the conditions in which a casualty occurs. [Citation.] Congress did not mean that the standards of legal duty must be the same by land and sea. Congress meant no more than this, that the duty must be legal, i. e., imposed by law; that it shall have been imposed for the benefit of the seaman . . . ; and that the negligent omission to fulfill it shall have resulted in damage to his person. When this concurrence of duty, of negligence and of personal injury is made out, the seaman's remedy is to be the same as if a like duty had been imposed by law upon carriers by rail."

Here it does not appear to us that the pleaded facts from which, if the plaintiff is to recover, the breach of duty essential to the cause of action must be derived, disclose any pertinent duty either defined by the act, recognized at common law, or declared by federal decision. As to whether, as urged by plaintiff, "the time has come to expand . . . [the] doctrine [of employer's liability] one step further and to impose a duty upon the employer to use ordinary care to ascertain the whereabouts of a missing employee who is employed on a moving [but sometimes standing] train so that care may be given to such employee in the event that he is injured," we express no view. We are of the view, however, that until and unless such duty is declared by the federal courts we should not, in Federal Employers' Liability Act cases, undertake "expansion" of the common law doctrines of negligence through annexing, by our decision, to an old relation a new quality of duty and thus to impose liability where it is not clearly created by the act in question; the urged innovation in federal law, if it is to come at all, must derive from a federal source.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The legal issue here is whether an employer owes a duty to his employee to render aid when he has been injured in the course of his employment or, under appropriate circumstances, to take preliminary steps to ascertain whether or not his employee is in need of assistance, and if so, to render such aid as may be reasonable under the circumstances. Stated another way, the question is whether the employer is guilty of negligence when he fails to exercise ordinary care to ascertain if his employee has suffered an injury in the course of his employment, and if so, to render aid to him. The ''appropriate circumstances'' in the instant case consist of the chief member of a train crew (a conductor) being missing from the train to the knowledge of the train crew while it is traveling through and over isolated country, and the duties of the conductor require him to be active both on and off the train; the train passed several stations and no report of his absence was made. The majority opinion declares that *no duty whatsoever* is owed by the employer, at least until he has actual knowledge that his employee has suffered an injury. It would apparently find no such duty where a member of the crew, in the course of his duties, was last seen climbing to the top of a train traveling at high speed through an uninhabited country during a violent snowstorm and failed to return. No duty being present, there could be no liability, though the only steps necessary to save the absent man would be to look for him.

The majority opinion is founded upon two basic fallacies: First, it is held that because there is no *federal court* case involving the precise situation here presented, then the state court is helpless to fasten liability on the employer even though reasonable minds might differ as to whether its conduct constituted negligence. For illustration, it is said: ''It *is not*, we think, *the province of a state court*, in an action brought under the Federal Employers' Liability Act, to 'expand' the doctrines of negligence to impose on the employer a duty unknown at common law and neither defined in the act nor recognized by federal court decision.'' And later in the opinion: ''As to whether, as urged by plaintiff, 'the time has come to expand . . . [the] doctrine [of employer's liability] one step further and to impose a duty upon the employer to use ordinary care to ascertain

the whereabouts of a missing employee who is employed on a moving [but sometimes standing] train so that care may be given to such employee in the event that he is injured,' we express no view. We are of the view, however, that *until and unless such duty is declared by the federal courts we should not,* in Federal Employers' Liability Act cases, undertake 'expansion' of the common law doctrines of negligence through annexing, by our decision, to an old relation a new quality of duty and thus impose liability where it is not clearly created by the act in question; the urged innovation in federal law, if it is to come at all, *must derive from a federal source.''* [Emphasis added.]

The majority opinion is patently inconsistent. It holds that this court cannot declare the federal law to be that defendant owed a duty of care to investigate the employee's absence from the train because no federal court has so held. *Neither, as it admits, has any federal court held there is no such duty.* There is, therefore, no declared federal law on the subject. That being the case, under the theory of the majority opinion, the only course open to this court is to declare that it does not know what the federal law is—that this court is powerless to state, on its own initiative, what the federal law should be. That necessarily requires a dismissal here of the action without prejudice and leaving the employee to his redress in the federal court, all because of the impotence of this court to declare the federal law. But the majority opinion does not do this. It first states that this court cannot apply the federal law because there is none. Then it proceeds to announce the federal law by concluding that no duty was owed by defendant. Certainly, if this court cannot decide there is a duty, neither can it decide there is no duty. The absurdity of such a position is manifest. It gives substantiality to the frequent occurring criticism by laymen of the court's inability to solve the problems presented to them in a manner that accords with common sense and simple justice. In *Meredith* v. *Winter Haven,* 320 U. S. 228, 234 [64 S.Ct. 7, 88 L.Ed. 9], under the rule of *Erie Railroad Co.* v. *Tompkins,* 304 U. S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487], the lower federal court refused to decide the case because it felt it could not ascertain the state law. The Supreme Court of the United States declared that it must determine the state law, stating: ''But we are of opinion

that the difficulties of ascertaining what the state courts may hereafter determine the state law to be do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision.

"The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment . . . denial of that opportunity by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act. . . .

"*Erie R. Co.* v. *Tompkins, supra,* did not free the federal courts from the duty of deciding questions of state law in diversity cases. Instead, it placed on them a greater responsibility for determining and applying state laws in all cases within their jurisdiction in which federal law does not govern. Accepting this responsibility, as was its duty, this Court has not hesitated to decide questions of state law when necessary for the disposition of a case brought to it for decision, although the highest court of the state had not answered them, the answers were difficult, and the character of the answers which the highest state courts might ultimately give remained uncertain." Conversely in the instant case it is this court's duty under the Federal Employers' Liability Act to decide the federal law.

No one questions that the federal court cases are controlling on the question of whether there is negligence at common law in the particular case under the Federal Employers' Liability Act. *But where there are no federal cases on the subject, then the state courts must declare the law.* It is only where there are such cases on the subject that the state courts are left with the sole course of following them. It is to be noted that the state courts are expressly

given jurisdiction over cases under the act. (45 U. S. C. A. § 56.) If the majority opinion is correct, then every time a set of circumstances is presented upon which a federal court has not passed, the state court must deny relief. The innumerable factual backgrounds that may be the predicate for negligence and the countless changes and constant growth in the conception of the duties owed by one person to another, compel a recognition of the rule that in the absence of a controlling federal rule on the subject the state courts must perform their duty and arrive at a conclusion that is just and in harmony with current conditions.

There is a close analogy in another field of law. Since *Erie Railroad Co.* v. *Tompkins, supra,* the federal courts must apply the state law when the cases are there by reason of diversity of citizenship. If the state law on the subject cannot be ascertained because of lack of state court decisions, the federal court must state the rule. (See *MacGregor* v. *State Mutual Co.,* 315 U. S. 280 [62 S.Ct. 607, 86 L.Ed. 846] ; *Meredith* v. *Winter Haven, supra; Concordia Ins. Co.* v. *School Dist.,* 282 U. S. 545 [51 S.Ct. 275, 75 L.Ed. 528] ; *Henry W. Putnam Memorial Hospital* v. *Allen,* 34 F.2d 927 ; 92 U.Pa.L.Rev. 330.) Conversely in the instant case, there being no federal cases to follow, this court must decide what is the federal law on the subject.

The question therefore is to ascertain the common law as it would be declared by the federal court. In making that determination we must consider the scope and meaning of the term negligence in the Federal Employers' Liability Act, and the mode of ascertaining whether it exists.

Second, the majority opinion erroneously holds that no duty rested upon an employer to ascertain the whereabouts and condition of decedent conductor though it knew through its crew that decedent was missing while the train was traversing an isolated area.

It should be observed at the outset that the old common law notion that the employer owes very little, if any duty, to his employee, is and has been for many years outmoded and unsuited to modern employer-employee relations. It is aptly said : "The extent of the master's responsibility, although it was said to rest upon the understanding of the parties, undoubtedly was fixed by the courts upon the *basis of industrial conditions, and a social philosophy and an*

*attitude toward labor, which are long since outmoded.* The cornerstone of the common law edifice was the economic theory that there was complete mobility of labor, that the supply of work was unlimited, and that the workman was an entirely free agent, under no compulsion to enter into the employment. He was expected therefore to accept *and take upon himself all of the usual risks of his trade,* together with any unusual risks of which he had knowledge, and to relieve his employer of any duty to protect him. The economic compulsion which left him no choice except starvation, or equally dangerous employment elsewhere, was entirely disregarded. The employer's responsibility was limited to certain rather specific obligations, which it was felt that any workman had the right to demand. Even as to these obligations, the employer was not an insurer of safety, and was liable only for a failure to exercise reasonable care; and in addition, he was not responsible for the negligence of fellow-servants of the injured workman, as distinguished from the employer's own misconduct. The result was that for the great majority of industrial accidents there was no recovery, either because no lack of proper care could be charged against the employer, or because the workman was taken to have assumed the risk." [Emphasis added.] (Prosser on Torts, p. 506.) The principle that the master owes a duty to his employee is recognized in the Restatement. "(2) If a servant is hurt and thereby becomes helpless when acting within the scope of employment in an isolated place, or in a dangerous activity from a risk arising therefrom, and this is known to the master or to a person having duties of management, the master is subject to liability for his negligent failure or that of such person to give first aid to such servant and to care for him until he can be cared for by others. . . . *Not only does a master have a duty to a servant when a danger to him becomes imminent or when a risk has resulted in harm to him, but he may also have a duty before the existence of such imminence of risk or harm to provide means of rescue or relief.* Thus, in a dangerous business where accidents are likely to happen frequently, the employer is under a duty to make provision for some means of taking care of employees who are hurt. This does not necessarily have to be furnished by him, but some provision must be made for its being furnished by some one." [Emphasis added.] (Rest., Agency, § 512.) Under the italicized sentence the employer

undoubtedly owes a duty to investigate the absence of an employee under the circumstances present in the case at bar. The overwhelming weight of authority supports the proposition that the duty at least extends to first aid for an employee known to be injured. (See cases collected 7 Cal.L.Rev. 312; 17 Corn.L.Quarterly 505.) *It has been recently held that there is such a duty under the Federal Employers' Liability Act. (Szabo v. Pennsylvania R. Co. (1945), 132 N.J.L. 331 [40 A.2d 562].)*

*The term negligence as used in the Federal Employers' Liability Act is to be given a broad meaning.* As said in *Jamison v. Encarnacion,* 281 U. S. 635, 640 [50 S.Ct. 440, 74 L.Ed. 1082] : ''The act is not to be narrowed by refined reasoning or for the sake of giving 'negligence' a technically restricted meaning. It is to be construed liberally to fulfil the purposes for which it was enacted and to that end the word may be read to include all the meanings given to it by courts and within the word as ordinarily used. . . . 'Negligence' is a word of broad significance and may not readily be defined with accuracy. Courts usually refrain from attempts comprehensively to state its meaning.'' It is therefore not an unjustified extension of the rule requiring the employer to give succor to an injured employee to demand that he at least make an endeavor under the proper circumstances to ascertain whether an employee has been injured or is in danger. At most, it is only giving, as it must, a liberal construction to the term ''negligence.'' He need only make such inquiries and effort as would a person of ordinary prudence to find what has happened to his employee. He must assume, under facts like we have here, that the employee has not voluntarily abandoned his duties. It is presumed that ''a person is innocent of . . . wrong'' (Code Civ. Proc., § 1963 (1)), that ''the ordinary course of business has been followed'' (Code Civ. Proc., § 1963 (20)), and that ''things have happened according to the ordinary course of nature and the ordinary habits of life'' (Code Civ. Proc., § 1963 (28)). Thus, it must be assumed in the instant case that the conductor was not voluntarily absent from the train. That being true, it was incumbent on the employer to determine what had happened to him. The employer should anticipate that in all probability the employee was the victim of some accident. Accidents to railroad employees are far from uncommon. The employee

has no one else upon whom he can depend. The matter is cogently set forth in *Hunicke* v. *Meramec Quarry Co.,* 262 Mo. 560 [172 S.W. 43, Ann.Cas. 1915D 493, L.R.A. 1915C 789], where the court was discussing the reason for the employer's liability for failure to render aid to an injured employee when he knew he was injured. The language is clearly equally applicable where the employee was missing and no effort was made to investigate. The court said (p. 54 [172 S.W.]): ". . . that duty, in my opinion, grows out of the fact that, when we get down to the real facts in all such cases, there is an unexpressed humane and natural understanding existing between them to the effect that, whenever any one in such a case is so injured that he cannot care for himself, then the employer will furnish him medical or surgical treatment as the case may be. This is common knowledge. There is not an industrial institution in this country, great or small, where that practice is not being carried on to-day; and that has been the custom and usage among men from the dawn of civilization down to the present day, and will continue to be practiced in the future, just so long as the human heart beats to aid suffering humanity. The same principle underlies all other avocations of life. Even armies, while engaged in actual warfare, observe and obey this rule when possible. The soldier who refuses to tender surgical or medical aid to the victim of his own sword is eschewed by all decent men, while, upon the other hand, all who administer to the wants and necessities of the sick and wounded are considered as God's noblemen and as princes among men."

As hereinbefore stated, the legal issue here is whether the employer owed a duty to investigate the absence of the employee under the circumstances here presented. In my opinion, it should be declared to be the law of this state and also the federal law that it owed such duty. This being determined as a matter of law, the question of whether such duty was violated in this case is for the trier of fact. The degree of care required by railroads toward their employees is commensurate with the known dangerous character of railroad operations. Under such circumstances the *question of negligence in this case should have been left to the jury.* In *Blair* v. *Baltimore & O. R. Co.,* 323 U. S. 600 [65 S.Ct. 545, 89 L.Ed. 490], the United States Supreme Court was considering a case under the Federal Employers' Liability Act, after a jury had found negligence but the

Supreme Court of Pennsylvania found none. The court held the issue to be one to be decided by a jury, stating at page 602: ''To deprive railroad 'workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.' *Bailey* v. *Central Vermont R. Co.*, 319 U.S. 350, 354, 87 L.ed. 1444, 1447, 63 S.Ct. 1062. . . . We think there was sufficient evidence to submit to the jury the question of negligence posed by the complaint. The duty of the employer 'becomes ''more imperative'' as the risk increases.' *Bailey* v. *Central Vermont Ry. Co.*, 319 U.S. 350, 352, 353, 87 L.ed. 1444, 1446, 1447, 63 S.Ct. 1062. See also *Tiller* v. *Atlantic Coast Line R. Co.*, 318 *U.S.* 54, 67, 87 L.ed. 610, 617, 63 S.Ct. 444, 143 A.L.R. 967. . . . We cannot say as a matter of law that the railroad complied with its duties in a reasonably careful manner under the circumstances here, nor that the conduct which the jury might have found to be negligent did not contribute to petitioner's injury 'in whole or in part.' Consequently we think the jury, and not the court should finally determine these issues.'' We find language to the same effect in *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U.S. 54, 67 [63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967]: ''No case is to be withheld from a jury on any theory of assumption of risk; and *questions of negligence should under proper charge from the court be submitted to the jury for their determination.* Many years ago this Court said of the problems of negligence, 'We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others.' *Jones* v. *East Tennessee V. & G. R. Co.*, 128 U.S. 443, 445 [9 S.Ct. 118, 32 L.Ed. 478]. Or as we have put it on another occasion, 'Where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences,' the case should go to the jury.'' And in a footnote the following: ''It appears to be the clear Congressional intent that, to the maximum extent proper, questions in actions arising under the Act should be left to the jury.'' See, also, *Bailey* v. *Central Vermont Ry. Co.*, 319 U.S. 350 [63 S.Ct. 1062, 87 L.Ed. 1444].) Thus in the instant case it cannot be doubted that the question of negligence is at least a ''close'' one. Being such, *under*

*federal law it must be submitted to a jury* and not decided as a matter of law as does the majority decision.

The cases of *Batton* v. *Atlantic Coast Line R. Co.,* 210 N.C. 756 [188 S.E. 383], and *Haggard* v. *Lowden,* 156 Kan. 522 [134 P.2d 676], relied upon by the majority opinion fail to consider the factors heretobefore discussed. With little discussion they merely state a contrary rule, making no endeavor to ascertain or apply the federal law. No application for review by the Supreme Court of the United States was made in either case. Hence they do not even indirectly stand for the common law as declared by the federal courts. *Cortes* v. *Baltimore Insular Line,* 287 U.S. 367 [53 S.Ct. 173, 77 L.Ed. 368], is not in point. The most that appears is that there may be doubt that the rule of rescue of an employee applies other than to ships at sea. As before seen under those circumstances the plaintiff is entitled to have the issues decided by a jury. But in a very recent case (decided November 24, 1947) the Supreme Court of the United States by an unanimous decision reversed a federal district court and Circuit Court of Appeals decision which held that a railroad company was not liable under the Federal Employers' Liability Act for injuries to an employee as the result of a felonious attack by a third person, not an employee of the company. The only reference in the opinion of the Supreme Court to any common law on the subject was a comment contained in the Restatement of Torts promulgated by the American Law Institute. (*Lillie* v. *Thompson,* Oct. Term, 1947, 332 U.S. 459 [68 S.Ct. 140, 92 L.Ed. 115].) I do not cite this case as authority in support of plaintiff's position in the case at bar but simply to illustrate that the common law applicable to cases arising under the Federal Employers' Liability Act may be found elsewhere than in the decisions of the federal courts. My position is that since there are no decisions either by the federal courts or courts of this state to the contrary, this court should decide what the law should be. There is nothing new or unusual about this. We do it quite often, and when we do, we are announcing a rule of law which becomes the common law of this state. When a cause of action arises under the Federal Employers' Liability Act, and we find no federal cases laying down a contrary rule, we follow the rule which we have adopted. Otherwise, no action could be brought in a state court under the Federal Employers' Liability Act involving any

legal question which had not already been decided by the federal courts. If such were the law, the provision in the act providing for concurrent jurisdiction would be of little value to an injured employee who desires to bring his action in a state court under this provision of the act.

In announcing such a rule of law, all that is necessary for the members of this court to decide is that the complaint in this action alleges a factual situation which shows a violation of a duty by defendant. In such case plaintiff has stated a cause of action. In determining whether or not defendant owed such duty, we take into consideration the relationship of employer and employee which existed at the time of the accident, the nature of the employment, the duties of the employee and whether or not it is consonant with modern concepts of justice, fairness and ordinary human impulses that the employer should take sufficient interest in the welfare of his employee to investigate his absence from the train under the circumstances alleged in the complaint. If the court concluded that reasonable consideration for the safety of an employee would justify such an investigation, then we would conclude that the employer owed such a duty, and that would be the common law rule of this state.

Let us assume that on a stormy night when the snow was several feet deep in the Sacramento Canyon in Northern California, a brakeman who got on a train at Dunsmuir was observed missing after the train had left Dunsmuir half an hour and before it had stopped at any station; that although the other members of the crew knew that if he had fallen off the train in that locality he would be apt to perish from exposure within a few hours, they nevertheless failed to send word back to Dunsmuir or make any report of his absence until the train arrived at Sacramento some ten hours later, and that they could have reported his absence within half an hour after he disappeared; that when he was found, he had only minor injuries due to the fall from the train but he was dead as the result of being exposed to the elements for several hours. In view of the provisions of the Federal Employers' Liability Act abolishing the defenses of assumption of risk and negligence of a fellow servant, could we say that under the state of the facts narrated a railroad company did not owe a duty to that employee to investigate his absence and render such assist-

ance to him as might have been necessary to save his life? If such a case were submitted to this court, a decision holding that such a duty existed would be the common law of this state. That is all there is to this case so far as the law is concerned. So far as the facts are concerned, it would be a question for the trier of fact to determine whether or not the duty was violated, and if it was, whether such violation constituted negligence for which the defendant would be liable.

This would not be adding a new duty to the relationship of employer and employee, it would be simply recognizing a duty which should have always existed, but which had not been the subject of a judicial proceeding so far as this state or the federal courts are concerned. If this court or the Supreme Court of the United States had held that such a duty did not exist under the Federal Employers' Liability Act, I would agree with the majority opinion that there is no liability on the defendant in this case, but it admits that there are no such cases either of this court or any federal court and that any decision which we render will be the first of its kind in this state.

It should be remembered that when the so-called common law rule referred to in the majority opinion was evolved, the defenses of assumption of risk, negligence of a fellow-servant and contributory negligence were available to an employer in an action brought by his employee for personal injuries or by his heirs under wrongful death statutes, and that the Federal Employers' Liability Act completely abrogates and abolishes the first two of these defenses and modifies the third, thus completely changing the philosophy upon which the employer's liability for injury or death of his employee was based at common law. In other words, the common law rule which should be evolved in view of the philosophy enunciated in the Federal Employers' Liability Act should be based upon the modern concept of the relationship between employer and employee rather than the more conservative and outmoded concept of the common law relationship antedating the adoption of the Federal Employers' Liability Act and other similar acts by national and state Legislatures which extend greater protection to employees than was accorded under the conservative philosophy upon which the so-called common law rule was based. For these reasons I am convinced that a railroad company

should be held liable under the Federal Employers' Liability Act for the injury or death of its employee under the circumstances presented in the case at bar and the judgment rendered by the trial court in this case should be reversed.

Traynor, J., concurred.