[Civ. No. 13647.   First Dist., Div. One.   May 26, 1948.]

JAAN BERNARD PERSSON, Respondent, v. JAMES GRIFFITHS & SONS, INC. (a Corporation), Appellant.

Hoge, Pelton & Gunther and Leo V. Killion for Appellant.

L. Charles Gay for Respondent.

PETERS, P. J.—Plaintiff, while employed as a winch operator on the ''Coastal Buccaneer,'' slipped and fell and seriously injured his hip. He brought this action under the Jones Act (38 Stats. 1185; 46 U.S.C.A. § 688), alleging that the employer had failed to provide him with a safe place in which to work. The cause was tried before a jury, resulting in a $15,000 verdict. From the judgment entered on the verdict, and from the order denying its motion for a new trial, the defendant appeals. The order denying the motion for a new trial is not appealable, and the appeal therefrom should be dismissed.

Defendant makes two contentions on this appeal, first, that the evidence is insufficient to sustain the judgment, and second, that prejudicial error occurred in the giving of one instruction.

The Jones Act gives to an injured seaman in such cases the right to a jury trial, and makes applicable to actions by seamen certain provisions of the Employers' Liability Act. (53 Stats. 1404; 45 U.S.C.A. §§ 51-60.) Under this last-named statute there is no doubt that it is the duty of the employer to furnish the employee with a reasonably safe place in which to work. (*Rey* v. *Colonial Nav. Co.*, 116 F.2d 580; *Armit* v. *Loveland*, 115 F.2d 308; *Cleveland-Cliffs Iron Co.* v. *Martini*, 96 F.2d 632; *The Alpha*, 44 F.Supp. 809.) Defendant does not contend to the contrary. Section 53 of 45 United States Codes Annotated provides that contributory negligence of the employee does not bar. recovery, the section adopting the doctrine of comparative negligence.

The accident giving rise to this action occurred about 8:40 p. m. on the evening of April 26, 1946. It is admitted that plaintiff was then employed as a merchant seaman and was then performing the duties of a winch operator, and that while so working he fell from the top of a deckload of lumber to the deck and broke his hip. The ship was then docked alongside a pier in San Francisco, its San Francisco cargo had been discharged, and the ship was being prepared to put out to sea. There were three cargo hatches on the vessel extending aft from the bow, numbered 1, 2 and 3. Each

hatch was surrounded by a "coaming," which, when the hatch covers were on, extended upwards from the deck something over 3 feet. The "foremast" was located between hatches 1 and 2, and two winches were located fore and aft of the foremast. The "mainmast" was located between hatches 2 and 3, and two winches were located fore and aft of that mast. On the "cross-tree" of each mast, some 20 to 30 feet above the deck, were two floodlights, adjustable so as to be able to throw light either fore or aft. It is also undisputed that the vessel was carrying a deckload of lumber, and that such lumber was piled to a height of 3 feet or more on both the port and starboard sides of hatch number 2. Piled on top of the lumber on the port side of hatch number 2 were large crates 8 or 9 feet square. Nothing was piled on the lumber on the starboard side. There is evidence that the lumber was piled so close to the starboard railing that there was no passageway on that side, and also evidence that the lumber was piled so close to the starboard side of number 2 hatch that there was no passageway on that side. On the starboard side the lumber was piled so as to extend to about the aft end of number 2 hatch, and so as to come to about 2 feet from the winch located aft of number 2 hatch. Thus there was a clear space on the deck of about 2 feet between the aft end of the lumber pile and the winch, and the winch was about 2 feet from the end of the hatch.

By about 8 p. m. on the night in question plaintiff, and the other men in his crew, had discharged all of the cargo from hatch number 1. They put on the hatch covers and secured the gear. They were then ordered by the chief mate to secure the gear on hatch number 2. This, among other things, required that a certain appliance called a "preventer guy" be attached to a cleat located on the deck. It was normally the duty of the winch operator to secure this appliance. Plaintiff testified that, although lights were trained on number 1 hatch, there was no light at all trained on number 2 hatch, particularly on the starboard side where the preventer guy was located, and that that area was quite dark; that he walked over the hatch cover on hatch number 2 and onto the lumber piled on the starboard side of the hatch; that he walked to the aft end of the pile of lumber intending to "ease myself down" to the deck with "one hand on the winch," and "one hand on the edge of the lumber"; that he reached for the winch but misjudged the distance and fell; that "I could not contact it, because I fell. If I had contacted it, I would not have

fell''; that he fell because of "the darkness. I misjudged the distance on account of the darkness"; that immediately after he was picked up the lights were turned on number 2 hatch; that we then "got lit up like a Christmas tree, all the lights on the ship got turned up."

Two seamen, Lindsay and Kristiansen, who were working with plaintiff at the time of the accident, corroborated plaintiff in all essential details. Both testified by deposition. Lindsay testified that he saw plaintiff walk across the lumber and fall; that plaintiff lost his balance as he went to step off the end of the deckload and fell into the clear area between the winch and the aft end of the lumber. He was positive that the starboard side of number 2 hatch was "dark. There was no light turned on" at the time of the accident, but that immediately after the accident somebody turned the lights on. He thought there was a light illuminating the port side of hatch number 2.

Kristiansen testified that he and plaintiff started over the lumber to secure the preventer guy; that plaintiff attempted to "get down off the deckload, and he put his hand on No. 2 winch to help himself get down, I suppose, and suddenly I seen him twist his body and fall on deck." He was quite clear in his testimony that, at the time of the accident, there were no "lights on which cast light at that place where he fell or in the area of the preventer guy"; that the starboard side of number 2 hatch was "pretty dark—very dark, in my opinion." He agreed that the lights were turned on shortly after the accident.

The only testimony introduced on behalf of defendant was the deposition of W. M. Gagnier, who was the chief mate on the ship at the time of the accident. He testified, as did plaintiff and his witnesses, as to the physical facts, except that he was not clear whether there was a passageway between the lumber and the railing, and between the lumber and number 2 hatch, but, even if there were such passageways by which the preventer guy could have been reached without crossing the lumber, he stated that it was "the most natural thing" for plaintiff to have crossed over the top of the lumber. He also testified that there were floodlights illuminating all three hatches, and was quite positive that a floodlight was trained on number 2 hatch before, during and after the accident. He admitted, however, that immediately after the accident he heard some of the crew discussing the poor lighting at hatch number 2, and also admitted that, when he took

a statement from plaintiff before plaintiff was removed from the ship to a hospital, plaintiff told him the accident happened because the deck lights were out.

The contention that the evidence, as a matter of law, fails to sustain the implied finding of negligence, is without merit. As already pointed out, under the statutes here involved it is the statutory duty of the employer to furnish his seamen with a reasonably safe place in which to work. It is too apparent to require further comment that, on the evidence introduced, the jury could and did reasonably find that the proximate cause of the accident was the negligent failure of the defendant to supply adequate lighting in the area in which plaintiff was required to work. Gagnier's testimony merely created a conflict which was resolved by the jury. That determination being based on substantial evidence should and must be sustained. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Blythe* v. *City & County of S. F.*, 83 Cal.App.2d 125 [188 P.2d 40]; *Davidson Steamship Co.* v. *United States*, 205 U.S. 187 [27 S.Ct. 480, 51 L.Ed. 764].)

■ The second contention of defendant is that the court committed prejudicial error in instructing the jury that "Under the law, it is presumed that plaintiff at the time and place in question was exercising ordinary care and acting as a reasonably prudent person would act." In this connection defendant relies on three cases holding that it is prejudicial error to instruct on the presumption of due care in a case where plaintiff or his witnesses testify in detail as to the circumstances surrounding the incident involved. (*Kelly* v. *Fretz*, 19 Cal.App.2d 356 [65 P.2d 914]; *Campbell* v. *City of Los Angeles*, 28 Cal.App.2d 490 [82 P.2d 720]; *Clary* v. *Lindley*, 30 Cal.App.2d 571 [86 P.2d 920].) These three cases did hold that, under the facts there involved, the giving of the instruction was not only error, but was prejudicial error. We agree with the defendant that, in the instant case, there was no room for the presumption, and that the giving of the instruction was error. But was it prejudicial? It will be noted that the three cases relied upon were all ordinary negligence cases in which contributory negligence on the part of the respective plaintiffs would have been a complete bar to their causes of action. But in the present case, as already pointed out, the doctrine of comparative negligence applies, and contributory negligence is not a bar. It has been directly held in this state that in such a case, although it is error to give the instruction when plaintiff's evidence shows

all the circumstances of his injury, such error is not prejudicial. The leading case is *Paulsen* v. *McDuffie,* 4 Cal.2d 111 [47 P.2d 709], where the action, as in the instant case, was under the Jones Act. After first holding that it was error to give the instruction, the Supreme Court held that, in a comparative negligence case, the giving of such an instruction was not necessarily prejudicial. In this connection Mr. Justice Curtis, speaking for a unanimous court, had the following to say (p. 119): ''Had this been a case where the contributory negligence of the plaintiff would have defeated his claim for damages, the consequences following the giving of that instruction might have been most serious, and possibly might have required a reversal of the judgment. In the present action, however, we have, as shown in the discussion herein, been much more concerned with the action of defendant's employees, and with the question of their negligence, than we have in the conduct of the plaintiff. Admitting that the plaintiff was negligent, still he is, as above stated, entitled to recover in this action. We are therefore of the opinion that the giving of this instruction worked no serious prejudice to the defendant. On the whole, the instructions were full and fair and were just, both to the plaintiff and the defendant.''

In view of the facts that in the present case there was but little evidence upon which a finding of contributory negligence could have been based, and that contributory negligence even if present would not bar a recovery, and in view of the fact that in all other respects the jury was fully, fairly and properly instructed, the rule of the Paulsen case would seem to be controlling.

Even if this were an ordinary negligence case in which contributory negligence would be a complete bar, it would not necessarily follow that the error in giving the due care instruction would be prejudicial as a matter of law. Although there is language in the Kelly, Campbell and Clary cases, *supra,* indicating or implying that the error in giving the questioned instruction is necessarily prejudicial, the better reasoned cases, decided both before and after those three cases were decided, hold that, although it is error to give the instruction, it is not prejudicial where the jury is otherwise fully, fairly and properly instructed. (*Tuttle* v. *Crawford,* 8 Cal.2d 126, 132 [63 P.2d 1128]; *Raggio* v. *Mallory,* 10 Cal.2d 723, 729 [76 P.2d 660]; *Ellison* v. *Lang Transportation Co.,* 12 Cal.2d 355, 360 [84 P.2d 510]; *Speck* v. *Sarver,* 20 Cal.2d 585, 588

[128 P.2d 16]; *Lewin* v. *Margolis*, 14 Cal.App.2d 746, 748 [59 P.2d 153]; *Lam Ong* v. *Pacific Motor T. Corp.*, 16 Cal. App.2d 275, 278 [60 P.2d 480]; *Parker* v. *Manchester Hotel Co.*, 29 Cal.App.2d 446, 457 [85 P.2d 152]; *Woodward* v. *Southern Pacific Co.*, 35 Cal.App.2d 130, 144 [94 P.2d 1028]; *Morrison* v. *Jose*, 57 Cal.App.2d 795, 802 [135 P.2d 586]; see, particularly, *Beck* v. *Sirota*, 42 Cal.App.2d 551, 562 [109 P.2d 419], where the problem is discussed at length.) In several of the above-cited cases one or more of the three cases cited by defendant were questioned, explained or distinguished. Under the rules announced in these last-cited cases whether the error in the giving of the instruction is or is not prejudicial depends upon all of the circumstances of the case, including the facts and the balance of the instructions.

In the instant case the evidence produced by defendant on the issue of plaintiff's negligence was not very strong. It consisted of evidence that there was another possible route plaintiff could have taken without crossing over the piled lumber. But defendant's testimony on this issue was by no means clear. Gagnier was not certain whether a passageway existed between the lumber and the rail and between the lumber and number 2 hatch. Moreover, even if such passageway existed, he conceded that the path taken by plaintiff was a "natural" one. Defendant also tried to defend on the ground that the area where plaintiff fell was well lighted. Gagnier so testified. Such testimony might relate to possible contributory negligence on the part of plaintiff. But plaintiff and two disinterested witnesses were most positive that the area was dark. Certainly, under the facts, the due care instruction could not have misled the jury.

That this is so is made quite clear when the balance of the instructions are considered. On the issue of the plaintiff's duty to exercise care for his own safety the charge was unusually detailed, fair, and complete. The jury was told not to select a single instruction, but to consider all instructions in deciding any issue; that contributory negligence was a matter of affirmative defense but that it might be shown by plaintiff's own evidence or inferences to be drawn therefrom; that contributory negligence was not a complete bar to recovery but, if found to exist, the jury could lessen the amount, if any, which it might award to plaintiff; that plaintiff would be guilty of negligence if he "placed any portion of his body in a dangerous position" if he, as a reasonable person, "should have known that said position was unsafe"; that where two

courses of action are open—one safe and the other unsafe—the exercise of reasonable care demands the selection of the safe course; that if plaintiff imprudently chose an unsafe method of doing his work, and was injured as a result of such, the verdict should go to the defendant; that plaintiff "was under the duty of being ever watchful of where he was walking or stepping or standing, or climbing as well as where he was placing his hands or any other portion of his body, if an ordinarily prudent person acting under like circumstances would so conduct himself"; that plaintiff was "under the duty of using his faculties, including his faculty of sight and touch for his own protection and taking such precaution and exercising such care as would be exercised by an ordinarily prudent person acting under like circumstances"; that if it was found that plaintiff imprudently "placed himself in an unduly dangerous position," not upon order, and that he should have known that such position was dangerous and likely to result in injury, he would not be entitled to recover.

Under these circumstances it is obvious that the giving of the questioned instruction could not possibly have been prejudicial.

The appeal from the order denying the motion for a new trial is dismissed; the judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 22, 1948. Edmonds, J., and Traynor, J., voted for a hearing.