[Civ. No. 16034. First Dist., Div. Two. Dec. 17, 1954.]

HENRY PETERSON, Respondent, v. PERMANENTE STEAMSHIP CORPORATION, Appellant.

John H. Black, Edward R. Kay, Cyril Appel and Appel, Liebermann & Leonard for Appellant.

Albert Michelson and Newell J. Hooey for Respondent.

NOURSE, P. J.—This is an action for damages for personal injuries under the Jones Act (46 U.S.C.A. § 688) which makes available such action at law based on negligence to a seaman injured in the course of his employment. The defendant appeals from a judgment on a verdict of $6,000 for plaintiff.

The complaint alleged in substance that plaintiff on February 28, 1951, when in the course of his employment he was standing lookout watch on the forecastle head of the steamship Permanente Silverbow, owned and operated by defendant, was thrown down and against the forepeak hatch cover of said vessel and injured because of the violent pounding of the ship and the sudden rising and falling of the forecastle. Negligence was predicated on negligently ordering plaintiff to stand lookout watch on the forecastle head under conditions then prevailing and on negligently navigating the vessel.

Appellant urges as grounds of appeal:

(1) The evidence does not sustain the allegations of negligence, a directed verdict should have been granted, and the case should not have gone to the jury.

(2) Erroneous admission of testimony as to opinion, custom and usage that when a ship pitches and pounds the lookout should be stationed on the bridge.

(3) Error in instructing the jury (a) to decide from the conflicting expert testimony what the custom of the sea was as to where the lookout should stand, and to find in favor of the expert testimony entitled to the greater weight; (b) that defendant owed plaintiff the duty of furnishing him a reasonably safe place to work, and (c) that the Jones Act allows recovery for any defect or insufficiency of the employer's appliances, boats or equipment.

These grievances are for a large part based on the contention that under section 62.25(a) of the shipping regulations es-

tablished by the Commandant of the Coast Guard in effect at the time of the accident (46 CFR 62.25(a)) "All vessels navigating the ocean during the night time shall have a lookout at all times at or near the bow," that said rule is obligatory, that no departure from it is authorized and that compliance with said rule cannot constitute negligence. In Griffin on Collision, page 262, note, it is said with respect to this provision: "It would seem that this provision as to lookouts is to be regarded as a regulation of the internal discipline of American vessels rather than as a collision rule governing civil liabilities." This statement is to some extent borne out by the fact that no case has been cited to us in which this rule is mentioned with respect to liability for not having the required lookout, notwithstanding the fact that the rule has existed at least since 1931, when it was section 25 of Rule V, General Rules and Regulations, Ocean and Coastwise, Board of Supervising Inspectors (Bureau Marine Inspection and Navigation) of March 2, 1931. But even if it is conceded that said regulation has the force of statutory law influencing civil liability as is accepted in *Belden* v. *Chase,* 150 U.S. 674, 698 [14 S.Ct. 264, 37 L.Ed. 1218], for navigation rules made by the board of supervising inspectors this would not mean that no departure from this rule can be permitted under special circumstances, even if the right to such departure is not expressly stated. The rule contains a further provision reading: "Nothing in this section shall exonerate any master or officer in command from the consequences of any neglect to keep a proper lookout or the neglect of any precaution which may be required by the ordinary practice of seamen or by the special circumstances of the case." However, such a provision, which is also contained in other statutory navigation rules, the International Rules for Navigation at Sea; the Navigation Rules for Harbors, Rivers and Island Waters, etc., the Great Lakes Rules, the Western River Rules (see 33 U.S.C.A. §§ 121, 221, 293 and 351), is construed not as a permit to disregard other express rules, but as requiring under some circumstances additional precaution. (The Rules of the Nautical Road, United States Naval Institute, 1954 edition, p. 321; Griffin on Collision, p. 514.) The rule which permits such disregarding is in the above statutory rules of navigation expressed as follows (with minor deviation): "In obeying and construing these Rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may

render a departure from the above Rules necessary in order to avoid immediate danger." (See 33 U.S.C.A. §§ 112, 212, 292 and 349.) No such provision is contained in the regulation here involved. Nevertheless the right and under certain circumstances the duty to depart from it must be read into said section. Appellant concedes that this must be so in extreme situations, e.g., when seawater pouring over the bow would wash a lookout placed there overboard. But there seems no good reason for such extreme restriction. In the Restatement, Torts, section 286, comment C it is said: "Many statutes and ordinances are so worded as apparently to express a universally obligatory rule of conduct. Such enactments, however, may in view of their purpose and spirit be properly construed as intended to apply only to ordinary situations and to be subject to the qualification that the conduct prohibited thereby is not wrongful if, because of an emergency or the like, the circumstances justify an apparent disobedience to the letter of the enactment. . . . The provisions of statutes, intended to codify and supplement the rules of conduct which are established by a course of judicial decision or by custom, are often construed as subject to the same limitations and exceptions as the rules which they supersede." We think this manner of construction is the only reasonable one also in the situation before us. Although the statutory rules cited before require only the keeping of a proper lookout, and that only by implication (The Rules of the Nautical Road, supra, p. 357; Griffin on Collision, p. 262) the cases have without reliance on regulation 62.25(a), supra, long since required the lookout to be stationed as far forward and near the water as possible, to wit, at the bow. (The Manchioneal, 243 F. 801, 805 [156 C.C.A. 313]; United States v. The Adrastus, 190 F.2d 883, 886; 15 C.J.S. Collision, § 108(d), pp. 114-115; The Rules of the Nautical Road, supra, p. 365; Griffin on Collision, 271-272.) However, this rule is not maintained rigidly, when the weather makes another position more suitable. (Oriental Trading & Transport Co. v. Gulf Oil Corp., 173 F.2d 108, 111.) In The Kaiserine Maria Theresa, 149 F. 97, 99 [71 C.C.A. 681], it was held that the coldness of the spray which flew aboard the steamship to freeze on the forward part of the vessel was a circumstance which justified removal of lookouts from there. Compare also Puratich v. United States, 126 F.2d 914, 916, where the trial court held that under the circumstances there prevailing the lookout's post on the bridge was as good as, if not better

than, a position at the bow. It would seem that, even if regulation 62.25(a) governs in this case, there remains the same possibility of departure as under the case law cited. Appellant cites many cases, among which *Belden* v. *Chase,* 150 U.S. 674, 698, 699, *supra,* which require strict adherence to rules for preventing collision and permit departure only to avoid impending peril. However these cases relate to rules of true navigation on the compliance with which other ships must be able to rely. ■ The same rationale does not apply to the position of the lookout, and we cannot accept that there exists a right or duty unnecessarily to endanger the life or limbs of a seaman by strictly keeping to the position of the lookout in the bow in situations when the advantage of such position does not justify the risk involved for the seaman. ■ The duty to provide a seaman with a reasonably safe place in which to work is enforced under the Jones Act. The failure to provide a seaman with a safe place to work can be present in many forms. (2 Norris, The Law of Seamen, § 688; *Hanson* v. *Luckenbach S.S. Co.,* 65 F.2d 457; *Persson* v. *James Griffiths & Sons, Inc.,* 85 Cal.App.2d 672, 673 [194 P.2d 86].) ■ It certainly includes the subjecting of a seaman to risks not justified by the object to be accomplished. In *Matson Navigation Co.* v. *Hansen,* 132 F.2d 487, 488, it is said: ''Obviously, the test of reasonable safety varies with the prevailing conditions. No liability flows from requiring a sailor to perform his necessary sailor's duties with the ship rolling and lurching in a heavy storm, even though he may be injured from a fall caused by a wave sweeping across the deck. Yet the owner would be liable if, instead of performing some necessary duty he was injured when sent by the mate across the same wave swept deck to rescue the ships cat. The test is whether the requirement of the sailor is one which a reasonably prudent superior would order under the circumstances.'' The question presented in this respect in our case is: would a reasonably prudent superior, because of his duty to guard the reasonable safety of the sailor, under the circumstances proved have departed from the rule that the lookout should be in the bow?

A statement of some of the evidence is now required. On the night of February 27, 1951, the vessel after having delivered a load of cement at Honolulu was returning without cargo. Oil and water had been taken in the aft part of the ship. It left Honolulu shortly after 10 p. m.; the accident happened at 12:25 a.m. (0025) February 28, some 25 or 30

nautical miles from Honolulu on the way to San Francisco. At 11 p.m. the witness Jones, then on lookout duty, had called the skipper on the telephone and told him it was pounding and banging real hard. The master only hung up the telephone. Jones testified "it was blowing very bad and the ship was banging" and "bucking the seas" so that he had to hang on to the gunwale. The pitching and pounding were getting worse all the time. Plaintiff was one of the three men who had the midnight to 4 o'clock watch. Under ship routine one is standing lookout, one going to the wheel, one acting as standby and they rotate these activities themselves during the watch. Plaintiff first acted as lookout at midnight. The ship's log for midnight showed: "Scattered clouds. Rough easterly sea and swells. Vessel pitching considerably at times. Good visibility." When plaintiff reached the forecastle head where the lookout stood a few minutes before 12 the ship, according to his testimony, was pounding up and down, jumping up and down quite heavily. When the empty ship with nothing in the forepart hits the sea she takes a tremendous bang. He could not walk and keep his balance at the forecastle head. He stationed himself just ahead of the forepeak hatch taking hold of one of the dogs (hatch cover fasteners about 15 inches above the deck). The wind prevented him from standing closer to the stem of the vessel; it was there too windy to keep his eyes open. Before he fell there were seven or eight bounces all bad but then a tremendous one and when the ship came down he was wrenched from his hold of the dog and fell against it. Although plaintiff felt sick he remained on the lookout until he was relieved at 5 minutes to 1. He then went amidship. The ship log shows that at 1:20 he reported his earlier fall. He did that to the officer who was at the wheel. He did not use the telephone like Jones. At 0029 the propeller speed was reduced from 77.7 revolutions per minute to 65 and at 0030 increased again to 70. At 1:25 filling of the No. 2 port and starboard tanks with water began. There remained log entries as to considerable pitching and occasional pounding.

Over and above this evidence there was much evidence as to custom and as to past experience with respect to the taking of the lookout from the bow to the bridge in bad weather and also opinion evidence as to good seamanship in that respect. So far as this evidence was offered by plaintiff and in his favor it was mostly objected to. In the opinion of plaintiff (an ablebodied seaman who had followed the sea since 1914

and in war time had acted as temporary third and second officer) the conditions prevailing at the time of the accident required removal of the lookout to the top bridge where he would be protected. That would accord with the custom of the sea and the customary practice on ships like the Permanente Silverbow and other ships. Coast Guard Regulation 62.25 (a) was so interpreted by seamen. The order for removal would come from the officer of the watch. Seaman Jones (eight years at sea) testified by deposition that his experience was that under similar circumstances the officer on duty would call the lookout to the flying bridge. It was the duty of said officer to look out for the man on the bow in that manner.

Earl Condon, a master mariner with 20 years' experience, gave as his opinion based on the ship log that the speed changes were a customary trying for a speed where the ship might perform better; the taking of ballast was to get her down deep enough in the water so that she would wear easily. It would make the ship behave better. When a ship is pitching considerably, reducing speed and ballasting is the natural thing to make it ride easily. Going at the speed she went, being light, she would slap down and strike with tremendous force and with the bow six feet higher than the stern there would be considerable strain and a very uncomfortable ship. The taking of ballast would reduce pounding and heaving and so would reduction of speed. He testified at length as to the normal placing of the lookout forward but that for different reasons he is taken off the bow to the bridge, among which pitching heavily so that there is a chance of his being injured. This is done at least when the visibility is good. In the situation here present good seamanship would have placed the man on the bridge. On the bridge the pendulum action of the sea is reduced. A man who has to hang on to keep from being thrown down can not maintain a lookout as required.

De Pinto, a master mariner 15 years at sea, also gave as his opinion, after examining the log of the Permanente Silverbow, that on such a ship under such conditions the lookout should be situated on the bridge because it is dangerous for the personnel to keep their footing down there and when the sea is pounding considerably he could not keep a proper lookout. ''The rules of the road simply state 'a proper lookout' based on the practice of seamanship and the special circumstances of the case. Consequently, the practice of

seamanship, a pounding vessel, the special circumstance of the case, the proper lookout is up on the bridge.''

The captain of the Permanente Silverbow conceded that under the Coast Guard regulations he had discretion as to when he can move the lookout to the bridge. The discretion was mainly exercised by the officer in charge of the watch. It was mainly used immediately when the lookout was going to get wet from spray coming over, even if not actually necessary, but hardly ever for pounding.

In urging that the above evidence does not support the verdict, appellant first contends that no order to stand lookout on the forecastle was proved but that plaintiff worked there voluntarily. Respondent's position that the ship's routine constituted an implied order must be accepted, the more so as it was conceded that it was for the officer of the watch to take plaintiff from the forecastle. So long as no such order had been given there was an implied order to stand on the forecastle.

Appellant further urges that the fall was an ordinary risk of the seaman's dangerous employment which the seaman is considered to have assumed. (*The Iroquois,* 194 U.S. 240, 243 [24 S.Ct. 640, 48 L.Ed. 955].) As we said before, citing the Matson Navigation Company case, this is the crux of the matter: was it a necessary risk or a risk that the officer should have avoided? In the evidence stated there is substantial evidence to the latter effect.

Appellant also contends that there was no evidence at all of negligence in navigation causing the injury. Respondent does not stress this side of the negligence question much. It is true that there was no express expert evidence that the navigation was faulty, but could this not be inferred from the evidence that the ship was going with unreduced speed and without ballast, although it was empty of cargo and had only some load aft and that after the accident had taken place speed was diminished and ballast taken in? It is true, however, that there was hardly any evidence that if these measures had been taken earlier the accident would not have taken place. ■ At any rate the evidence showing negligence in not placing plaintiff on the bridge sufficiently supports the decision. For application of the substantial but conflicting evidence rule in a Jones Act case see *Guay* v. *American President Lines, Ltd.,* 81 Cal.App.2d 495, 508 [184 P.2d 539].

Appellant contends that under federal rule here applicable

the case should not have gone to the jury, citing *Brady* v. *Southern Ry. Co.*, 320 U.S. 476 [64 S.Ct. 232, 88 L.Ed 239].

██ It is true that what should be submitted to the jury in the Jones Act and Federal Employers' Liability Act cases (like the Brady case) is considered a federal question. (*Carpenter* v. *Atchison, T. & S. F. Ry. Co.*, 109 Cal.App.2d 18, 21 [240 P.2d 5]; *Dice* v. *Akron, Canton & Youngstown R. Co.*, 342 U.S. 359 [72 S.Ct. 312, 96 L.Ed. 398].) However the later United States Supreme Court cases show that the court considers jury trial as a most important part of the rights provided for by said two statutes and that it is disinclined to take cases from the jury or to reverse jury decisions either because of insufficiency of the evidence or failure of the complaint to state sufficient facts for negligence. See the New Supreme Court and the Old Law of Negligence, 18 Law and Contemporary Problems, 110; A Decade of Progress Under the Federal Employers' Liability Act, *idem.*, page 257; *Anderson* v. *Atchison, T. & S. F. Ry. Co.*, 333 U.S. 821 [68 S.Ct. 854, 92 L.Ed. 1108], reversing *Anderson* v. *Atchison, T. & S. F. Ry. Co.*, 31 Cal.2d 117 [187 P.2d 729]; *Lavender* v. *Kurn*, 327 U.S. 645, 653 [66 S.Ct. 740, 90 L.Ed. 916].) In the Lavender case it is said: "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." ██ Our case is not one of the very exceptional cases where under such federal rule the case should have been taken from the jury or now reversed because of insufficiency of the evidence.

██ Next appellant contends that opinion evidence as to where a lookout should be placed under the circumstances of the case, about the custom of the sea as to such placing and as to the meaning of the Coast Guard regulation, was erroneously admitted together with evidence as to former experience as to the placing of lookouts, all for the purpose of nullifying the Coast Guard ordinance, 62.25(a), which as statutory law should have been interpreted by the court only.

Many cases are cited to the effect that custom cannot abolish plain requirements of law or of regulations with force of law. ██ However, as stated before, there is here no

plain, uninfringable rule of law, if ordinance 62.25(a) is a rule of law governing civil responsibility to all. A right to deviate under special circumstances for the safety of the lookout must be recognized and under what circumstances a reasonable master would deviate and whether these circumstances were present are jury questions. They have some resemblance to the question of excuse for violation of traffic statutes which without excuse is negligence *per se*. In *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 590 [177 P.2d 279], it is said, quoting from *Scalf* v. *Eicher*, 11 Cal. App.2d 44, 54 [53 P.2d 368] : " 'Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether the violation was excusable or justifiable are questions of fact except in a case where ". . . the court is impelled to say that from the facts reasonable men can draw but one inference. . . ." ' " The question whether in this case the matter was for the court or the jury must be decided according to federal law. Although the parties do not cite any decisions under federal law similar to the Satterlee case there seems little doubt that by the preference of the United States Supreme Court for jury decisions in Jones Act and Federal Employers' Liability Act cases the same rule must be accepted. So it was held in *Dice* v. *Akron, Canton & Youngstown R. Co.*, 342 U.S. 359 [72 S.Ct. 312, 96 L.Ed. 398], that although Ohio law required matters of fraud in the obtaining of a release to be tried partly by the court such could have no application in a Federal Employers' Liability Act case where all factual issues had to be decided by the jury. In *Anderson* v. *Atchison, T. & S. F. Ry. Co.*, 31 Cal.2d 117 [187 P.2d 729], our Supreme Court decided in such a case as a matter of law that there was no duty to use ordinary care to ascertain the whereabouts of one who was missing from the train on which he was employed. The United States Supreme court reversed, holding without determining the question of law that if the matter had gone to the jury the evidence might have "revealed a situation as to which a jury under appropriate instructions could . . . have found that decedent's exposure and consequent death were due 'in whole or in part' to failure of respondent's agents to do what 'a reasonable and prudent man would ordinarily have done under the circumstances of the situation.' " In *Pierro* v. *Carnegie-Illinois Steel Corp.*, 186 F.2d 75, an action under the Jones Act, in which the inspection certificate of the Coast

Guard required four firemen to be in service and the master proceeded to home port with only three firemen after one became ill, it was held that the issue whether the master had exercised an unreasonable judgment could not be answered as a matter of law but was rather properly a matter for the trier of fact in the first instance. The above cases show a tendency to eliminate as much as possible questions of law and to treat the whole matter as a question of conduct of a reasonable man for the jury.

█ In such matters evidence as to customary standards of conduct is admissible in cases relating to injury to seamen as well as in other negligence cases, although in neither is such evidence conclusive of the standard of due care in relation to negligence. (65 C.J.S. 1047 et seq., Negligence § 232; 38 Am.Jur. 1015, Negligence § 317; II Wigmore on Evidence, §§ 461, 488; *Sieracki* v. *Seas Shipping Co.*, 149 F. 2d 98, 100; 79 C.J.S. Seamen §§ 212-213, p. 724, et seq.; 48 Am.Jur. Shipping, §§ 186-187, p. 130.) █ Custom or usage is a matter of fact to be testified to as such by witnesses qualified by adequate knowledge. It can be proved by instances or by direct testimony of its existence by such witnesses (32 C.J.S. Evidence, § 483, p. 139; *Ames Mercantile Co.* v. *Kimball S.S. Co.*, 125 F. 332, 336.) █ Moreover in nautical matters expert evidence is admissible as to what good seamanship required under the circumstances of the case. (48 Am.Jur. 374; 32 C.J.S. 332; *Union Ins. Co.* v. *Smith*, 124 U.S. 405 [8 S.Ct. 534, 31 L.Ed. 497].) Such evidence can in the discretion of the trial court also be admitted as to the ultimate issue in the case if expert opinion as to it is required and cannot practically be restricted to a separate part of it. (*Hamilton* v. *United States*, 73 F.2d 357, 358, 359; VII Wigmore on Evidence, § 1921 and compare *Casey* v. *Seas Shipping Co.*, 178 F.2d 360, 362.) █ Nevertheless it may be conceded that in the admission of the evidence complained of the above rules were not always correctly followed and distinguished. However, whatever irregularity there may have been in that respect was of form more than of substance. Those who testified as to custom of the sea and/or good seamanship had sufficient experience to know the facts as to custom and to give their opinion as to good seamanship. We are convinced that the not always correct wording of their testimony was not prejudicial.

Appellant especially complains of the fact that witnesses were permitted to testify what the ordinance meant and in

how far there was a discretion to deviate from it. It is said correctly that this was a matter of law for the court to rule on by instruction and that no such testimony should have been admitted. Although this seems correct, again we think the error was not prejudicial. The matter can best be treated together with appellant's grievances with respect to instructions which are closely related to it.

It must first be pointed out that the court read the ordinance 46 CFR 62.25(a) literally to the jury with an instruction that such Coast Guard regulations have force and effect of law. The court also gave an instruction on the duty to furnish a reasonably safe place to work. Moreover, there is an instruction (from B.A.J.I.) which requires conscientiousness and ordinary care in the management of a ship and states that whether ordinary care was used must be determined in the light of the then known facts, practices and experiences of the business, the accumulated knowledge of the trade, the prevailing view of experts, the necessities of the situation, and all practical considerations involved. Appellant objects to the instruction on the duty to furnish a reasonably safe place to work, but the objection is without merit. It is said that the instruction is outside the issues as only a negligent order to stand lookout on the forecastle was alleged. Evidently the gravamen of the complaint is that the plaintiff was ordered to stand watch (work) in an unsafe place. The duty to furnish a reasonably safe place to stand watch was a duty which the master had to weigh against the duty under the ordinance and an instruction on both was therefore required. What seems objectionable is that there is no instruction on the relation between the rule of the ordinance and the reasonable safety of the watchman, custom, experience, due care, etc., but this is not pointed out as error. Appellant complains of the giving of a further instruction to the effect that the jury should consider opinion evidence of experts and must resolve the conflicts in their testimony concerning the customs of the sea. It is said that the jury could apply this rule to the testimony given by expert witnesses as to the meaning of the ordinance and the discretion to deviate from it, and could on this basis replace the ordinance by the prevailing expert opinion as to the customs of the sea. Although the instruction does not specifically relate to that matter it could possibly also be applied to it. However, it could not eliminate the express instruction given as to the force of law of the ordinance, an instruction in its

unmitigated form possibly even too favorable to appellant. It has already been said that the admission of evidence as to the meaning of the ordinance was error and that the court should have instead instructed on the interrelation of the different rules and elements involved. However, the statements made by the witnesses as to this matter were to the general effect that as a rule the lookout should be placed in the bow, but that for different reasons, among which danger for the safety of the lookout, deviation was permitted. These statements are generally in accord with what we have found to be the law and although they were stated to the jury by witnesses instead of by the court, we do not consider this prejudicial. Also if the court had instructed on the general rule as to deviation under special circumstances, evidence as to custom and good seamanship with respect to specific circumstances of such kind would have remained admissible and necessary. We hold that the technical errors do not require reversal.

Appellant's further complaint concerning an instruction given to the effect that the Jones Act gives an action for injuries caused by negligence of the employer and his agents or by a defect or insufficiency in appliances, boats and equipment caused by such negligence, although in this case no such defect was involved, is wholly without merit. Such introductory instruction is evidently not prejudicial. (*Guay* v. *American President Lines, Ltd.*, 81 Cal.App.2d 495, 498, 516 [184 P.2d 539].)

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied January 14, 1955, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1955. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.